UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PARIMAL PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| | ) | **COMPLAINT** |
| CHICAGO BRIDGE & IRON COMPANY | ) | |
| N.V., L. RICHARD FLURY, FORBES I.J. | ) | **JURY TRIAL DEMANDED** |
| ALEXANDER, JAMES R. BOLCH, | ) | |
| DEBORAH M. FRETZ, W. CRAIG KISSEL, | ) | |
| LARRY D. MCVAY, JAMES H. MILLER, and | ) | |
| MARSHA C. WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Parimal Patel ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       Plaintiff brings this action against Chicago Bridge & Iron Company N.V. ("CB&I" or the "Company") and its Supervisory Board (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder and to enjoin the expiration of an exchange offer (the "Exchange Offer"), pursuant to which CB&I will be acquired by McDermott International, Inc. ("McDermott") (the "Proposed Transaction").

2.       On December 18, 2017, CB&I and McDermott issued a joint press release announcing that CB&I had entered into a Business Combination Agreement with McDermott

and its affiliates (the "Merger Agreement").  Under the terms of the Merger Agreement, CB&I

stockholders will receive 2.47221 shares of McDermott common stock, or, if McDermott effects

a planned 3-to-1 reverse stock split (the "Reverse Stock Split") prior to the closing of the

Proposed Transaction, 0.82407 shares of McDermott common stock. Upon closing of the

Proposed Transaction, McDermott stockholders will own approximately 53% of the outstanding

shares of McDermott common stock and CB&I shareholders will own approximately 47% of the

outstanding shares of McDermott common stock.   The Proposed Transaction is valued at

approximately $6 billion.

3.       On January 24, 2018, defendants filed a joint Registration Statement on Form S-

4 (the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The

Registration Statement, which recommends that CB&I stockholders tender their shares in the

Exchange Offer, omits or misrepresents material information concerning, among other things: (i)

the Company's and McDermott's financial projections, utilized by the Company's financial

advisor, Centerview Partners LLC ("Centerview") in its financial analyses; (ii) the data and

inputs underlying the financial valuation analyses that support the fairness opinion provided by

Centerview; (iii) the background process leading to the Proposed Transaction; and (iv)

Centerview's potential conflicts of interest.  The failure to adequately disclose such material

information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as CB&I

stockholders need such information in order to make a fully informed decision whether to tender

their shares in support of the Proposed Transaction.

4.       In short, the Proposed Transaction will unlawfully divest CB&I's public

stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders.   To remedy defendants'

Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Exchange Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  CB&I maintains its administrative headquarters in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CB&I common stock.

9.      CB&I is a company organized under the laws of the Netherlands and maintains its administrative headquarters at One CB&I Plaza, 2103 Research Forest Drive, The Woodlands, Texas 77380.  CB&I's common stock is traded on the NYSE under the ticker

symbol "CBI."

10.     Defendant L. Richard Flury ("Flury") has served as Non-Executive Chairman of the Board since 2010, and as a director of CB&I since May 2003.

11.     Defendant Forbes I.J. Alexander ("Alexander") has served as a director of CB&I since 2017.

12.     Defendant James R. Bolch ("Bolch") has served as a director of CB&I since 2012.

13.     Defendant Deborah M. Fretz ("Fretz") has served as a director of CB&I since 2013.

14.     Defendant W. Craig Kissel ("Kissel") has served as a director of CB&I since 2009.

15.     Defendant Larry D. McVay ("McVay") has served as a director of CB&I since 2008.

16.     Defendant James H. Miller ("Miller") has served as a director of CB&I since 2014.

17.     Defendant Marsha C. Williams ("Williams") has served as a director of CB&I since 1997.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     McDermott is a corporation incorporated under the laws of the Republic of Panama and maintains its principal executive offices at 4424 West Sam Houston Parkway North, Houston, Texas 77041.   McDermott provides engineering, procurement, construction and

installation, front-end engineering and design, and module fabrication services for upstream field developments worldwide. McDermott's common stock is traded on the New York Stock Exchange under the ticker symbol "MDR."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20.      Founded in 1889, CB&I provides a wide range of services, including conceptual design, technology, engineering, procurement, fabrication, modularization, construction, commissioning, maintenance, program management, and environmental services to customers in the energy infrastructure market throughout the world, and is a provider of diversified government services. With more than a century of experience and approximately 42,100 employees worldwide, CB&I capitalizes on its global expertise and local knowledge to safely and reliably deliver projects virtually anywhere. At a given point in time, CB&I has active projects in process in more than 70 countries.

21.      In recent years, CB&I has divested certain of its non-core businesses. For example, on January 4, 2016, CB&I announced it had completed the sale of its nuclear power construction business, previously included within its Engineering & Construction operating group, to Westinghouse Electric Company LLC for approximately $161.0 million, effective December 31, 2015.

22.      Then, on June 30, 2017, CB&I announced it had completed the sale of its Capital Services business to an affiliate of private equity firm Veritas Capital for $700 million, with net proceeds of approximately $650 million after working capital adjustments and transaction costs.

5

23.     Following the divestiture of these businesses, the Company currently operates in three groups, which represent CB&I's reportable segments: (i) Engineering & Construction; (ii) Fabrication Services; and (iii) Technology.

24.     Through its Engineering & Construction group, CB&I provides engineering, procurement, and construction services for major energy infrastructure facilities.  Projects for this operating group include upstream and downstream process facilities for the oil and gas industry, such as refinery process units and petrochemical facilities, as well as liquefied natural gas ("LNG") liquefaction and regasification terminals, and fossil electric generating plants for the power generation industry.

25.     CB&I's Fabrication Services segment provides fabrication and erection of steel plate structures; fabrication of piping systems and process modules; manufacturing and distribution of pipe and fittings; and engineered products for the oil and gas, petrochemical, power generation, water and wastewater, mining and mineral processing industries.  Projects for this operating group include above ground storage tanks, LNG and low temperature tanks, field erected pressure vessels and spheres, elevated water storage tanks and other specialty structures, process modules, fabrication of piping and structural steel, induction bending and module prefabrication and assembly.

26.     The Company's Technology segment provides proprietary process technology licenses and associated engineering services and catalysts, primarily for the petrochemical and refining industries, and offers process planning and project development services and a comprehensive program of aftermarket support.

27.     Beginning in the first half of 2017, CB&I management explored the possibility of a partial or whole spin-off or sale of the Company's technology and engineered products

business (the "Technology Sale") to raise capital to pay off outstanding debt.  In connection with the Technology Sale, CB&I retained a financial advisor in July 2017 (the "Technology Sale Advisor") who conducted an outreach to potential purchasers in September 2017.  Following this outreach, CB&I entered into confidentiality agreements with more than 30 potentially interested parties.

28.     During the same timeframe, McDermott and CB&I engaged in initial discussions regarding a potential business combination.  Following a July 25, 2017 meeting between CB&I's Chief Financial Officer ("CFO") and McDermott's CFO, the parties held introductory calls with other members of management and on August 15, 2017, CB&I and McDermott entered into a mutual nondisclosure agreement.

29.     Also in August 2017, CB&I engaged Centerview to act as a financial advisor with respect to a possible business combination and related financing matters.

30.     Following an approximately three month long process and multiple rounds of bidding, on December 6, 2017, the Board determined to abandon the Technology Sale and instead pursue a potential business combination with McDermott wherein CB&I stockholders would receive McDermott shares representing approximately 47% of the combined company.

31.     On December 17, 2017, representatives of Centerview rendered their fairness opinion and the parties subsequently executed the Merger Agreement the next day.

**The Proposed Transaction**

32.      On December 18, 2017, McDermott and CB&I issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> HOUSTON and THE WOODLANDS, Texas – December 18, 2017 – McDermott International, Inc. (NYSE:MDR) and CB&I (NYSE:CBI) today announced that the companies have agreed to combine in an all-stock transaction to create a premier fully vertically integrated onshore-offshore company, with a broad

engineering, procurement, construction and installation ("EPCI") service offering and market leading technology portfolio.

Upon completion of the transaction, McDermott shareholders will own approximately 53 percent of the combined company on a fully diluted basis and CB&I shareholders will own approximately 47 percent. Under the terms of the business combination agreement ("BCA"), CB&I shareholders will be entitled to receive 2.47221 shares of McDermott common stock for each share of CB&I common stock owned (or 0.82407 shares if McDermott effects a planned three-to-one reverse stock split prior to closing), subject to any withholding taxes. The estimated enterprise value of the transaction is approximately $6 billion, based on the closing share price of McDermott on December 15, 2017.

"Customers worldwide increasingly seek a single company that can offer end-to-end solutions, and the combination of McDermott and CB&I responds to these evolving customer needs by creating a leading vertically integrated company," said David Dickson, President and Chief Executive Officer of McDermott. "This transaction combines two highly complementary businesses to create a leading onshore-offshore EPCI company driven by technology and innovation, with the scale and diversification to better capitalize on global growth opportunities. McDermott has been on a three-year journey that has transformed our company and created a model for delivering sustainable and profitable growth that we believe will unlock value in the near and long term. By applying McDermott's operational excellence across the combined portfolio, we will be a best-in-class solutions provider driven by consistency in systems, processes, execution and culture. We have great respect for the CB&I team and look forward to working with them to realize significant benefits for our combined shareholders, customers and employees."

"The combination with McDermott maximizes value for shareholders and provides the opportunity to participate in significant upside potential as we create a premier vertically integrated engineering, procurement, fabrication, construction and installation provider with significant scale, diversification and global presence," said Patrick K. Mullen, CB&I President and Chief Executive Officer. "Together, we will have a broadened reach across the entire energy industry that addresses evolving customer needs, along with a much stronger and more flexible financial profile than CB&I would independently, which will benefit all our stakeholders. This unique opportunity to combine with McDermott was presented as we pursued the sale of our Technology and former Engineered Products businesses. Our Supervisory and Management Boards and our management team reviewed multiple strategic options and we ultimately decided this transaction is the best path forward and in the best interest of CB&I, and its shareholders and other stakeholders."

**The Registration Statement Contains Material Misstatements and Omissions**

33.     The defendants filed a materially incomplete and misleading Registration

Statement with the SEC and disseminated it to CB&I's stockholders.  The Registration Statement

misrepresents or omits material information that is necessary for the Company's stockholders to

make an informed decision whether to tender their shares in support of the Proposed Transaction.

34.     Specifically, as set forth below, the Registration Statement fails to provide

Company stockholders with material information or provides them with materially misleading

information concerning: (i) CB&I's and McDermott's financial projections, relied upon by

CB&I's financial advisor Centerview; (ii) the data and inputs underlying the financial valuation

analyses that support the fairness opinion provided by Centerview; (iii) the background process

leading to the Proposed Transaction; and (iv) Centerview's potential conflicts of interest.

Accordingly, CB&I stockholders are being asked to tender their shares in connection with the

Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning CB&I's and McDermott's Financial Projections***

35.     The Registration Statement is materially deficient because it fails to disclose

material information relating to the Company's intrinsic value and prospects going forward.

36.     First, the Registration Statement omits material information regarding CB&I

management's financial projections and the financial analyses performed by the Company's

financial advisor Centerview.

37.     For example, the Registration Statement sets forth:

Centerview performed a discounted cash flow analysis of CB&I based on the
CB&I Forecasts and McDermott based on the McDermott Forecasts. . . .

In performing these analyses, Centerview calculated the estimated present value
of the standalone unlevered after-tax free cash flows that CB&I and McDermott
were each forecasted to generate during the year ending December 31, 2018
through the year ending December 31, 2022. In the case of CB&I, the unlevered
free cash flow was adjusted to exclude the cash impact of CB&I's net operating

loss carryforwards, or NOLs. Financial data of CB&I was based on the CB&I Forecasts. Financial data of McDermott was based on the McDermott Forecasts.

Registration Statement at 101.  The Registration Statement discloses the Company's unadjusted set of unlevered free cash flows for the years ending December 31, 2018 to December 31, 2022. Yet, the Registration Statement fails to disclose CB&I's unlevered free cash flows, adjusted to exclude the cash impact of CB&I's net operating loss carryforwards ("NOLs") used by Centerview in its analysis, as well as the line items utilized to calculate the Company's adjusted unlevered free cash flows.   Additionally, the Registration Statement fails to disclose the Company's NOLs over the projection period that were taken into account in Centerview's Discounted Cash Flow ("DCF") Analysis.

38.    Moreover, the Registration Statement fails to disclose the unlevered after-tax free cash flows that McDermott was forecasted to generate during the year ending December 31, 2018 through the year ending December 31, 2022 utilized by Centerview in its DCF analysis.

39.    Further, the Registration Statement states that, in arriving at its fairness opinion, Centerview reviewed "certain tax and other cost savings and operating synergies projected by the management of CB&I and the management of McDermott to result from the Combination furnished to Centerview by CB&I for purposes of Centerview's analysis, which are referred to in this section of this document as the 'Synergies.'"  Registration Statement at 97.  The Registration Statement further sets forth:

> Centerview performed a valuation analysis of the Synergies. Centerview first performed a discounted cash flow analysis of the unlevered-free cash flow the cost and operating synergies reflected in the Synergies (the "Cost Synergies") were forecasted to generate during the year ending December 31, 2018 through the year ending December 31, 2022. . . . Centerview separately performed a discounted cash flow analysis of the cash flow impact of the tax-related synergies forecasted to result from tax basis step-up associated with the sale of CB&I's technology business as contemplated by the Business Combination Agreement for

10

the 15-year period following the Combination, as reflected in the Synergies (the "Tax Synergies").

Id. at 102-03.   However, the Registration Statement fails to disclose any of the Synergies projected by CB&I and McDermott management, including the Cost Synergies and the Tax Synergies, that Centerview relied upon in its analyses.

40.     Further, the Registration Statement discloses certain projections of CB&I for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA and Unlevered Free Cash Flow, and for McDermott, including EBITDA and Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

41.     The omission of this information renders the statements in the "Opinion of CB&I's Financial Advisor," "Certain Forward-Looking Financial Information Prepared by McDermott," and "Certain Forward-Looking Financial Information Prepared by CB&I" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

42.     The Registration Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, CB&I's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender

11

their shares in support of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to CB&I's stockholders.

43. With respect to Centerview's DCF analyses, the Registration Statement fails to disclose: (i) the Company's unlevered free cash flows for the years ending December 31, 2018 to December 31, 2022 adjusted to exclude the cash impact of CB&I's NOLs; (ii) McDermott's unlevered after-tax free cash flows for the years ending December 31, 2018 to December 31, 2022; (iii) the estimated present value of CB&I's estimated NOLs for the years ending December 31, 2018 through December 31, 2028; (iv) the inputs and assumptions underlying the discount rate ranges of 9.5% to 10.5% for CB&I and 11.0% to 12.0% for McDermott used in the analyses; and (v) the perpetuity growth rates for each of CB&I and McDermott implied by the analyses.

44. With respect to Centerview's valuation analysis of the Synergies, the Registration Statement fails to disclose: (i) the Cost Synergies for the years ending December 31, 2018 through December 31, 2022; (ii) the Tax Synergies for the 15-year period following the Proposed Transaction; (iii) the net present value of CB&I's standalone U.S. net operating losses anticipated to be utilized in the sale of the Company's technology business as contemplated by the Merger Agreement; (iv) the inputs and assumptions underlying the discount rate ranges of 9.5% to 10.5% for each of the Cost Synergies and Tax Synergies used in the analysis; and (v) the implied perpetuity growth rates resulting from the analyses.

45. With respect to Centerview's Selected Public Comparable Companies Analysis, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies observed by Centerview in the analysis; (ii) any benchmarking analyses for CB&I and McDermott in relation to the selected companies analyzed by

Centerview; and (iii) McDermott's calendar year 2018 and 2019 estimated Adjusted EBITDA[1] utilized by Centerview in the analysis.

46.     With respect to Centerview's Selected Precedent Transactions Analysis, (i) the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Centerview in the analysis; (ii) any benchmarking analyses Centerview performed for the selected transactions; and (iii) McDermott's calendar year 2017 estimated Adjusted EBITDA utilized by Centerview in the analysis.

47.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48.     The omission of this information renders the statements in the "Opinion of CB&I's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background Process of the Proposed Transaction*

49.     The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

50.     The Registration Statement sets forth that "[i]n early September 2017,. . . . CB&I ultimately entered into confidentiality agreements with more than 30 potentially interested parties, including both strategic and financial buyers."  Registration Statement at 58.  However, the Registration Statement fails to disclose whether any of these confidentiality agreements include standstill provisions that are still in effect and/or contain "don't ask, don't waive"

---

[1] McDermott's 2018 and 2019 EBITDA are disclosed on page 106 of the Registration Statement.

("DADW") standstill provisions that are presently precluding each and every one of these prospective bidders from making a topping bid for the Company.

51.     The disclosure of the terms of the confidentiality agreements CB&I entered into with potential buyers is crucial to CB&I stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.  This information takes on heightened importance considering that the Company is restricted from releasing any person from, or modifying or waiving any provision of, any confidentiality, standstill or similar agreement by the terms of the Merger Agreement.

52.     Further, the Registration Statement fails to disclose the actual economic and other terms proposed by each of the companies that submitted proposals to engage in a transaction with CB&I.  Specifically, the Registration Statement indicates that, on September 27, 2017, CB&I received proposals from eight potential buyers of CB&I's technology business, and on November 20, 2017, CB&I received three final proposals for a transaction with the Company. Registration Statement at 59, 63.  The Registration Statement, however, fails to disclose the details of each of those proposals.  CB&I's stockholders are entitled to understand what offers were made to and rejected by CB&I so that they can assess for themselves whether the Proposed Transaction with McDermott is the best transaction possible.

53.     The omission of this information renders the statements in the "Background of the Combination" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Centerview's Potential Conflicts of Interest*

54.     Further, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Centerview in acting as the Company's financial advisor.

55.     The Registration Statement discloses that "[i]n the two years prior to the date of its written opinion, Centerview was engaged to provide certain financial advisory services to CB&I, including strategic advisory services, and Centerview received compensation from CB&I for such services."   Registration Statement at 105.   Yet, the Registration Statement fails to disclose the nature of Centerview's previous financial and strategic advisory services, as well as the amount of compensation Centerview received in connection with those services.

56.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

57.     The omission of this information renders the statements in the "Opinion of CB&I's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

58.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Exchange Offer, Plaintiff and the other stockholders of CB&I will be unable to make a fully-informed decision whether to tender their shares in support of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CB&I**

59.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

61.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisor, the sales process for the Company, and potential conflicts of interest faced by the Company's financial advisor.   The defendants were at least negligent in causing the Registration Statement to be filed with these materially false and misleading statements.

62.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding whether to tender their shares in support of the Proposed Transaction.

63.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

65.        Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.        The Individual Defendants acted as controlling persons of CB&I within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CB&I and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

67.        Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68.        In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

69.        In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues

17

and information that they reviewed and considered—descriptions the Company directors had input into.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CB&I's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the Exchange Offer, unless and until defendants disclose and disseminate the material information identified above to CB&I stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 22, 2018

/s/ *William B. Federman*
William B. Federman (SD TX #21540 / TBA #00794935)
FEDERMAN & SHERWOOD
2926 Maple Ave., Suite 200
Dallas, TX 75201
Telephone:    (214) 696-1100
Facsimile:    (214) 740-0112
Email:  wbf@federmanlaw.com

and

10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Plaintiff's Liaison and Local Counsel

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
(pro hac applications to be filed)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Plaintiff's Lead Counsel

*Attorneys for Plaintiff*